IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT CREASY,                          :
                                        :        Case No. 04-CV-2296
                Plaintiff,              :
                                        :
        v.                              :
                                        :
NOVELTY, INC.,                          :        (Judge McClure)
                                        :
                Defendant               :

# M E M O R A N D U M

October 26, 2005

## BACKGROUND:

On October 18, 2004, plaintiff Robert Creasy ("Creasy"), commenced this

action in the Middle District of Pennsylvania.  The three-count complaint alleged

that Creasy's employment was wrongfully terminated by defendant Novelty, Inc.

(Novelty), in violation of the Age Discrimination in Employment Act, 29 U.S.C. §

621 (ADEA), the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213

(ADA), and the Pennsylvania Human Relations Act (PHRA), 43 Pa. C.S.A. §§

951-63.  Plaintiff alleges that he was discharged from his job because of his age,

fifty-five,[1] and because of a physical impairment, sleep apnea.

---

[1]As we later note, it appears to the court that plaintiff was fifty-four when

On July 17, 2005, Creasy filed an amended complaint to clarify his claims. In his amended complaint, Creasy continues to assert causes of action under the ADEA, ADA, and the PHRA.  On September 15, 2005, defendant filed the instant motion for summary judgment.  The motion is now fully briefed, and for the following reasons the court will grant the motion in part.

## DISCUSSION:

### I. LEGAL STANDARD

It is appropriate for a court to grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

"If the nonmoving party has the burden of persuasion at trial, 'the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'" Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir. 1989) (quoting Chippolini v. Spencer Gifts, Inc., 814 F.2d 893,

---

 his employment was terminated.

2

896 (3d. Cir. 1987)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In evaluating a motion for summary judgment the court will draw all reasonable inferences from the evidence in the record in favor of the nonmoving party. Am. Flint Glass Workers Union v. Beaumont Glass Co., 62 F.3d 574, (3d Cir. 1995). The nonmoving party, however, cannot defeat a motion for summary judgment by merely offering general denials, vague allegations, or conclusory statements; rather the party must point to specific evidence in the record that creates a genuine issue as to a material fact. See Celotex, 477 U.S. at 32; Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

## II. FACTUAL BACKGROUND

### A.  Plaintiff's Failure to Comply with Local Rule 56.1

First, we note that plaintiff has not complied with Local Rule 56.1 which provides in relevant part: "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended there exists a genuine issue to be tried." L.R. 56.1.

Defendant  has filed a separate statement of material facts with citations to the record in support.  (Rec. Doc. No. 32-2.)  Under Local Rule 56.1, "[a]ll

material facts set forth in the statement required to be served by the moving party

will be deemed admitted unless controverted by the statement required to be served

by the opposing party." L.R. 56.1. Therefore, the court could admit all the

statements provided by the defendants as unopposed. The plaintiff has provided a

concise statement of facts in his brief in opposition, (Rec. Doc. No. 35, at 2-3);

albeit, without citations to the record. Therefore, although plaintiff has not

complied with the local rules, the court will not deem admitted statements made by

defendant that plaintiff has opposed, so long as plaintiff's statements are supported

by evidence in the record.

### B.  Statement of Relevant Facts

Plaintiff, Robert Creasy, is an adult individual residing in Mifflinburg,

Pennsylvania. Creasy was born on January 7, 1948. Defendant, Novelty, Inc., is a

foreign corporation authorized to conduct business in the Commonwealth of

Pennsylvania and has a principal address at 351 West Muskegon Drive, Greenfield,

Indiana.

Creasy was an employee of Novelty from October 13, 1997 until December

2, 2002. While Creasy was employed with Novelty he was a Salesperson/Route

Driver. As a Salesperson/Route Driver, Creasy's duties included servicing

approximately eighty convenience stores. At the stores, Creasy was responsible

for stocking shelves, organizing Novelty's products' displays, keeping display areas neat, and removing outdated products.  Creasy's job required that he service twelve to fifteen stores per day, and that he load and unload his company vehicle.  Creasy, however, did not have to adhere to any particular daily schedule, and rarely had contact with his supervisors.

On November 12, 2002, Michael Evan Clark, then Creasy's Regional Manager, received a complaint from Shawn Hardy, a Regional Manager for Uni-Mart, that Creasy was not properly servicing Uni-Mart stores in his region.  According to Clark's affidavit, Hardy specifically complained that Novelty's display racks in his stores were dirty, cluttered, and poorly merchandised.  Upon receiving Hardy's complaint, Clark inspected several of Creasy's stores with Hardy.  These inspections confirmed to Clark that the stores were not being properly serviced.  Clark then developed an action plan for Creasy that contained specific requirements for each Uni-Mart store Creasy serviced.[2]  Clark contends that he was extremely concerned about the Uni-Mart account because the company was Novelty's principal customer in the area serviced by Creasy.  After approximately two weeks, Clark inspected Creasy's stores to determine whether

_____

[2]This plan has not been provided to the court, nor have any documents that may be contained within Novelty's employee file for Creasy.

Creasy had followed Clark's action plan.  At that time Clark discovered that Creasy had not followed the plan and, therefore, he directed Rob Zorger, then Creasy's District Manager, to terminate Creasy's employment.

It was solely Clark's decision to terminate Creasy's employment.  Clark asserts that he decided to discharge Creasy only because of the complaint from Hardy, and Creasy's failure and/or refusal to follow the action plan he developed to correct the situation.  Creasy asserts that he was fired because of his disability and his age.

Creasy has been diagnosed with sleep apnea, and as a result, uses a CPAP machine and has taken prescription drugs.  The sleep apnea affects Creasy's ability to sleep normally.  Under deposition, Creasy testified that his sleep apnea had caused him to fall asleep while driving the company vehicle.  Although Clark knew that Creasy had previously taken almost three weeks off for medical reasons during August and September 2002, he asserts that he was never informed that Creasy had any ongoing medical problems that affected his ability to work on a daily basis.

Creasy's deposition testimony is consistent with Clark's account; Creasy informed Clark, Zorger, and coworker Dave Naugel, that he had sleep apnea, and that was why he needed to take the time off in August and September 2002.  There is no evidence that Clark was ever informed by Creasy, or by anyone at Novelty,

that Creasy had a medical condition that required an accommodation, or that Creasy had requested an accommodation, other than the time he took off in September 2002.[3]

Creasy was fifty-four years old at the time of his discharge from employment.[4]   Approximately forty percent of Novelty's salespersons/route drivers are more than forty years old, and approximately five percent are more than fifty years old.  Creasy asserts that on the day his employment was terminated, Zorger did not provide a reason for the termination.  Because of this, Creasy then sought an explanation from Clark.  Clark allegedly told Creasy that "he thought somebody younger could do a better job."  (Rec. Doc. No. 35, Ex. 1, at 77, 78.)

Since his termination from employment with Novelty, Creasy has not looked for work.  In February 2003, Creasy became unable to work full time and went on social security disability.

---

[3]Plaintiff's deposition makes this eminently clear. ( See Rec. Doc. No. 35, Ex. 1, at 51, 108, and 121-26.)

[4]Defendant states, citing the amended complaint,  that Creasy was fifty-five years old on the date of his discharge, December 2, 2002.  (Rec. Doc. No. 32, at 7, ¶ 13.)  Creasy was born on January 7, 1948.  Therefore, he was fifty-four years, ten months, and twenty-five days old.

## III.  CREASY'S ADA CLAIM

The ADA seeks to protect individuals with disabilities from discrimination by employers.  See 42 U.S.C. § 12101(b).  Because Creasy relies on indirect evidence, he bears the initial burden of establishing a prima facie case of disability discrimination under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), by a preponderance of the evidence.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 & n.5 (3d Cir. 2003); Bearley v. Friendly Ice Cream Corp., 322 F. Supp. 2d 563, 574 (M.D. Pa. 2004).  To establish a prima facie case under the ADA, Creasy must demonstrate that he: (1) is disabled within the meaning of the ADA; (2) was qualified to perform the essential functions of his job, with or without accommodation; and (3) suffered an adverse employment decision because of discrimination.  See Williams v. Phila. Housing Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004) (citing Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999)).  In order to make out a prima facie case, and survive the instant motion for summary judgment, Creasy must demonstrate each of those elements by a preponderance of the evidence.  Walton v. Mental Health Ass'n of Se. Pa., 661, 668 (3d Cir. 1999).

The ADA defines "disability" as: "(A) a physical or mental impairment that

substantially limits one or more major life activities of such individual; (B) a record

of such impairment; or (C) being regarded as having such an impairment."  42

U.S.C. § 12102(2); see 29 C.F.R. § 1630.2(g).  Importantly, simply having an

impairment that does not substantially limit a major life activity is not a disability,

and therefore is not covered by the ADA.  See Toyota Motor Mfg., Ky., Inc. v.

Williams, 534 U.S. 184, 195 (2002).

Major life activities are defined as "functions such as caring for oneself,

performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and

working."  29 C.F.R. § 1630.2(i).  Major life activities are "those basic activities

that the average person can perform with little or no difficulty."  29 C.F.R. Pt.

1630, App. § 1630.2 (I).

A "substantially limiting" impairment is an impairment that renders an

employee "unable to perform a major life activity that the average person in the

general population can perform," or that significantly restricts the employee as to

"the condition, manner or duration under which an individual can perform a

particular major life activity as compared to the condition, manner, or duration

under which the average person in the general population can perform that same

major life activity." 29 C.F.R. § 1630.2(j); see Toyota, 534 U.S. at 195-96.

Pertinent factors for the court to consider include: "the nature and severity of the

impairment; the duration or expected duration of the impairment; and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." 29 C.F.R. §§ 1630.2(j)(2)(i)-(iii); see Toyota, 534 U.S. at 196.

Defendant argues that: (1) Creasy does not have a disability under the ADA; (2) sleep apnea is not a disability under the ADA; (3) Creasy failed to request an accommodation and engage in an interactive process; (4) Creasy did not perform his job satisfactorily; and (5) Creasy was not treated differently than other employees.  Plaintiff contends that: (1) sleep apnea is a disability under the ADA; and (2) Creasy did request an accommodation, i.e., his three-week vacation, and he was fired upon his return to work.

First, we note that this is plaintiff's second amended complaint.  The court has already clarified to the parties, by order dated July 6, 2005 (Rec. Doc. No. 27), what was required of plaintiff to establish a prima facie case of discrimination.  In our earlier order, we noted that Creasy's first amended complaint failed to state a legally sufficient claim, particularly as to the first two elements of his prima facie case, i.e., that Creasy was disabled within the meaning of the ADA and was qualified to perform the essential functions of his job, with or without accommodation.  (Rec. Doc. No. 27, at 5-6.)  To address these deficiencies,

plaintiff's second amended complaint circuitously states that Creasy's sleep apnea substantially impaired him in the major life activity of "sleeping."  (Rec. Doc. No. 28, at 2, ¶ 15.)  The second amended complaint also states that Creasy was capable of performing the essential functions of his job with reasonable accommodations.[5]

As we noted in our prior order, a diagnosis of sleep apnea alone is not enough to be a disability under the ADA.  See Toyota, 534 U.S. at 195 ("Merely having an impairment does not make one disabled.")  Creasy must demonstrate, with admissible evidence, that his sleep apnea substantially impairs a major life activity.

Numerous courts of appeals have found sleep to be a major life activity. Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 644 (2d Cir. 1998); E.E.O.C. v. Sara Lee Corp., 237 F.3d 349, 352 (4th Cir. 2001); Swanson v. Univ. of Cincinnati, 268 F.3d 307, 316 (6th Cir. 2001); Heisler v. Metro. Council, 339 F.3d 622, 628 (8th Cir. 2003); McAlindin v. County of San Diego, 192 F.3d 1226, 1234-35 (9th Cir. 1999); Steele v. Thiokol Corp., 241 F.3d 1248, 1253 (10th Cir. 2001); Pack v. Kmart Corp., 166 F.3d 1300, 1305 (10th Cir. 1999); see also Rossi

---

[5]Creasy asserts that the three weeks he took off from work because of his sleep apnea were an accommodation.

v. Alcoa, Inc., 129 Fed. Appx. 154, 158 (6th Cir. 2005); Cartwright v. Lockheed

Martin Util. Servs., Inc., 40 Fed. Appx. 147, 153 (6th Cir. 2002); Boerst v. General

Mills Operations, Inc., 25 Fed. Appx. 403, 406 & n.2 (6th Cir 2002).  Relying on

the case law of these other circuits, district courts within our circuit have applied

the substantial impairment analysis to the major life activity of sleeping.  Peter v.

Lincoln Technical Inst., Inc., 255 F. Supp. 2d 417, 432-33 (E.D. Pa. 2002)

(applying substantial impairment analysis to determine whether plaintiff suffering

from sleep apnea was disabled under ADA); Popko v. Pa. State Univ., 84 F. Supp.

2d 589, 593 (M.D. Pa. 2000) (Caputo, J.); Reese v. Am. Food Serv., 2000 WL

1470212, *6 (E.D. Pa. Sep. 29, 2000) (Waldman, J.).  We agree with the approach

these courts took, and therefore, will also apply a substantial impairment analysis to

Creasy's case.

"The question of whether an individual is substantially limited in a major life

activity is a question of fact."  Williams, 380 F.3d at 763.  The Third Circuit

follows the EEOC's interpretive guidelines to determine if a plaintiff is substantially

limited in one or more major life activities; this approach necessitates that we

conduct a two-step analysis.  Peter, 255 F. Supp. 2d at 431 (citing Mondzelewski

v. Pathmark Stores, Inc., 162 F.3d 778, 783 (3d Cir. 1998).  Step one is to

determine if the plaintiff is substantially impaired in a major life activity other than

working.  If the court finds that the plaintiff is substantially impaired in the first step,

then the inquiry ends.  If not, then the court turns to the second step of determining

whether the plaintiff is limited in the major life activity of working.  Mondzelewski,

162 F.3d at 783; see, e.g., Merit v. Se. Pa. Transit Auth., 315 F. Supp. 2d 689, 698

(E.D. Pa. 2004) (Rufe, J.).

First, Creasy's counsel has not provided to the court sufficient evidence to

indicate that Creasy's sleep was impaired.  Plaintiff's testimony from his deposition

indicates that while he was working with Novelty his sleep apnea made him tired all

the time, because he did not get his sleep at nighttime.  (Rec. Doc. No. 35, Ex. 1, at

88.)  Other than vague generalities, plaintiff has not introduced evidence about the

extent of Creasy's sleep impairment.  The only area where plaintiff did provide

specifics was plaintiff's testimony regarding the oxygen levels in his blood.

Apparently, after taking three weeks off work, and using his CPAP machine to

sleep at night, in conjunction with other medications, Creasy was able to restore the

oxygen levels in his blood to ninety-six percent, from a low of forty percent, and

improve his condition.  A court must consider these sorts of corrective measures

when determining whether plaintiff is substantially impaired.  Sutton v. United Air

Lines, Inc., 527 U.S. 471, 488 (1999); Fiscus v. Wal-Mart Stores, Inc., 385 F.3d

378, 385-86 (3d Cir. 2004).  Plaintiff's testimony only suggests to the court that if

13

Creasy treats with medication he can improve his condition.  (See Rec. Doc. No. 35, Ex. 1, at 127-28 (Creasy's sleep apnea was under control "[a]s long as [he] sleep[s] with a CPAP"))See, e.g., Rossi, 129 Fed. Appx. at 158 ("Rossi testified that he sleeps well when he takes his medication; therefore, he is not substantially limited by his condition, which fails to rise to the level of a disability.") With such a sparse evidentiary record, we cannot find that plaintiff is substantially impaired in the major life activity of sleeping.  See, e.g., Heisler, 339 F.3d at 628;  Rossi, 129 Fed. Appx. at 158; Cartwright, 40 Fed. Appx. at 153 (6th Cir. 2002).

Now to the second step in our analysis, plaintiff's counsel wholly fails to advance an argument that Creasy is substantially impaired in the major life activity of working.  In order to advance an argument that he was substantially impaired from the major life activity of working plaintiff's counsel would have had to have submitted evidence of Creasy's work-related abilities and qualifications, the jobs available in his geographic area, the number of jobs utilizing his particular abilities and the number of those jobs from which he is disqualified due to his impairments (i.e., he is restricted from a class of jobs), or the number of jobs that do not utilize his particular abilities and the number of those jobs from which he is disqualified due to his impairments (i.e.,he is restricted from a broad range of jobs in various classes).  See Rufe, 315 F. Supp. 2d at 701 & n.29 (citing 29 C.F.R. §

14

1630.2(j)(3)(ii)(A)-(C)).  Plaintiff has presented none of this evidence.  Creasy

cannot establish a prima facie case of discrimination under the ADA because he has

not demonstrated to the court that he is substantially impaired in any major life

activity.  Therefore, the court will enter judgment in favor of the defendant on

Count I of the complaint and the corresponding state disability claim alleged in

Count III.

## IV.  CREASY'S ADEA CLAIM

"To prevail on an intentional age discrimination claim under either the ADEA

or the 'analogous' provision of the PHRA, a plaintiff must show that his or her age

actually motivated or had a determinative influence on the employer's adverse

employment decision."  Fasold v. Justice, 409 F.3d 178, 183-84 (3d Cir. 2005)

(internal quotations and citations omitted).   A plaintiff can maintain a claim of age

discrimination on the basis of either direct or indirect evidence.  Id. at 184.  The

parties' evidentiary burdens depend on the type of evidence plaintiff relies on to

bring his case.   In the instant case, although not articulated by counsel, plaintiff has

presented direct evidence, via testimony elucidated by defense counsel at Creasy's

deposition.  Defendant's briefs, however, only address the merits of plaintiff's

prima facie ADEA case.[6]  An ADEA claim based on direct evidence of animus

follows the evidentiary framework set forth in Justice O'Connor's controlling

opinion in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).  "Under Price

Waterhouse, when an ADEA plaintiff alleging unlawful termination presents 'direct

evidence' that his age was a substantial factor in the decision to fire him, the burden

of persuasion on the issue of causation shifts, and the employer must prove that it

would have fired the plaintiff even if it had not considered his age."  Fakete v.

Aetna, Inc., 308 F.3d 335, 338 (3d. Cir. 2002) (citing Price Waterhouse, 490 U.S.

---

[6]The McDonnell-Douglas burden shifting framework applies to claims

brought under the ADEA when those claims are based on indirect evidence.  Kautz

v. Met-Pro Corp., 412 F.3d 463, 465 (3d Cir. 2005) (citing McDonnell Douglas

Corp. v. Green, 411 U.S. 792 (1973)); Stanziale v. Jargowsky, 200 F.3d 101, 105

(3d Cir. 2000) (same).  In order to establish a prima facie case of discrimination

under the ADEA, Creasy must show that: (1) he was a member of a protected

class, i.e., that he was over forty; (2) he was qualified for the position; (3) he

suffered an adverse employment decision; and (4) that he was ultimately replaced

by a person sufficiently younger to permit an inference of age discrimination.

Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir. 2001) (citing

Connors v. Chrysler Fin. Corp., 160 F.3d 971, 973 (3d Cir. 1998)).

at 265-66 & <u>Walden v. Georgia-Pacific Corp.</u>, 126 F.3d 506, 512-13 (3d Cir. 1997)).

Creasy introduced direct evidence that he was terminated from his employment on the basis of his age.  Creasy testified at his deposition that on or about the December 2, 2002, the day of his termination, Clark, the sole decision maker in terminating Creasy,[7] allegedly  told Creasy that "he thought somebody younger could do a better job."  (Rec. Doc. No. 35, Ex. 1, at 77, 78.)

Clark's statement, allegedly made on or about the day of Creasy's employment termination, by the decision maker, cannot be considered a stray remark, and constitutes direct evidence of discrimination.  <u>See</u> <u>Price</u> <u>Waterhouse</u>, 490 U.S. at 277 (noting that stray remarks, statements by nondecision makers, and statements by decision makers unrelated to the decisional process itself do not meet the standard of proof for direct evidence); <u>see</u> <u>e.g.</u>, <u>Glanzman v. Metro. Mgmt. Corp.</u>, 391 F.3d 506, 512-14 (3d Cir. 2004) (finding ADEA plaintiff produced direct evidence of discrimination); <u>Fakete</u>, 308 F.3d 338-40 (same). Clark's alleged statement, made while in the scope of his employment as Novelty's regional director, would be admissible at trial as nonhearsay under Fed. R. Evid.

---

[7]Clark's affidavit indicates that he was the sole decision maker in terminating Creasy's employment.  (Rec. Do. No. 33, Ex. 3, at 2, ¶ 10.)

801(d)(2)(D).

In order to dispute plaintiff's claims, defendant has come forward with the affidavits from Clark, and Novelty's Human Resources Director, Victoria L. Ferguson.  In Clark's affidavit he states: "At the time of Creasy's termination, I was not aware of his age, and neither his age nor his medical condition played any part in my decision to terminate him."  (Rec. Doc. No. 33, Ex. 3, at 3, ¶ 14.) Clark's affidavit addresses how Creasy was allegedly not meeting his employer's expectations, and Ferguson asserts that the documentation in Creasy's personnel file indicates that Creasy was terminated solely for poor performance.[8]   Ferguson also states that approximately forty-percent (40%) of Novelty's salespersons/route drivers are more than forty (40) years old, and approximately five-percent (5%) are more than fifty (50) years old, and that to her knowledge Novelty has never had a claim of age discrimination.  Neither affidavit addresses Clark's alleged statement to Creasy.

This information does not help defendant meet its high burden in order to succeed on its motion for summary judgment.  Defendant has to leave no doubt to a rational finder of fact that it would have fired Creasy, even if it had not considered his age.  See Glanzman, 391 F.3d at 514.  Although defendant contends that

---

[8]Neither party has provided the court with copies of this documentation.

Creasy's work was inadequate, it has not introduced into the record any

contemporaneous documentation of Creasy's poor performance, nor has

defendant included a copy of Clark's plan to improve Creasy's work.   Under <u>Price</u>

<u>Waterhouse</u>, there is a genuine issue of material fact as to whether defendant would

have fired Creasy even if it had not considered his age.   Therefore, a date for trial

will be set as to plaintiff's ADEA claim and his corresponding PHRA claim.


## V.  CREASY'S PHRA CLAIMS

The Pennsylvania Human Relations Act forbids "any person, employer,

employment agency, labor organization, or employee, to aid, abet, incite, compel,

or coerce the doing of any act declared by this section to be an unlawful

discriminatory practice."   43 Pa. C.S.A. § 955(e).   Courts interpret the PHRA's

provisions identically with the corresponding provisions of the ADA and ADEA.

<u>Kautz</u>, 412 F.3d at 466 n.1;  <u>Rinehimer v. Cemcolift, Inc.</u>, 292 F.3d 375, 382 (3d

Cir. 2002) (citing <u>Kelly v. Drexel University</u>, 94 F.3d 102, 106 (3d. Cir. 1996));

<u>Buskirk v. Apollo Metals</u>, 307 F.3d 160, 166 n.1 (3d Cir. 2002).   Therefore,

because we find that defendant is entitled to summary judgment on plaintiff's ADA

claim, Creasy's PHRA claim on the basis of a disability fails.   Under the same

reasoning that his PHRA claim for disability fails, his claim for age discrimination

survives the instant motion.

## VI.  MITIGATION OF DAMAGES

Finally, Novelty asks the court to enter summary judgment limiting the potential scope of Creasy's damages for lost earnings because he has failed to mitigate damages by not looking for future work, was partially disabled, and in February 2003, three months after his separation from Novelty, became completely disabled, and began collecting social security disability.  Plaintiff contends that had he not been discharged, he would have continued to work for Novelty as long as he could have.  This does not address whether he attempted to mitigate his damages, and it is clear that Creasy did not seek employment since his termination from employment in December 2002.  Therefore, to the extent any damages would have been awarded for lost earnings, Creasy will be precluded from recovering beyond the date of February 2003.  We agree with plaintiff, however, that Creasy's military related disability is not relevant to offsetting any award.

## <u>CONCLUSION:</u>

For the above-stated reasons, by accompanying order we will grant defendant's motion for summary judgment as to plaintiff's claim under the ADA and his corresponding PHRA disability claim.  Plaintiff's ADEA claim, and his corresponding PHRA age claim, however, will survive the motion for summary

judgment.  Plaintiff's damages for lost and future earnings shall be capped to reflect his lost earnings from December 2002 until February 2003, the time he became totally disabled.

     s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT CREASY,           :

                        :       Case No. 04-CV-2296

        Plaintiff,       :

                        :

   v.                   :

                        :

NOVELTY, INC.,             :     (Judge McClure)

                        :

        Defendant      :

# O R D E R

October 26, 2005

For the reasons set forth in the accompanying memorandum,

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    Defendant's motion for summary judgment is granted in part.  (Rec. Doc. No. 32.)

2.    Plaintiff's ADEA claim and the corresponding claim under the PHRA (Counts II and III-age), survive the motion for summary judgment.

3.    Judgment is entered in favor of the defendant Novelty Inc., and against plaintiff Robert Creasy, as to the ADA claim (Count I), and the corresponding state disability claim (Count III-disability).

4.      Plaintiff's damages for future earnings shall be limited to those lost earnings from December 2002 until February 2003, the time that plaintiff became totally disabled.


　　s/ James F. McClure, Jr.　　
James F. McClure, Jr.
United States District Judge